UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                    Case No. 17-20112

v.

                                    Hon. John Corbett O'Meara

DEONISIO FISHER-BEMBERY,

    Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION TO SUPPRESS

Before the court is Defendant's motion to suppress evidence, which has been fully briefed. For the reasons explained below, Defendant's motion is granted.

## BACKGROUND FACTS

Defendant Deonisio Fisher-Bembery is charged with one count of felon in possession of a firearm. On December 14, 2016, law enforcement officers arrived at Bembery's residence to execute an arrest warrant for an absconded parolee, Geremy Tyler. Tyler was placed on a tether on November 18, 2016. See Govt. Ex. A. Tyler wanted to stay at his sister's house, but did not know the address. His parole officer advised him that he needed to return to his previously approved residence at his father's house until he was able to obtain his sister's address. Id.

Tyler did not go to his father's house, but spent the next two days "at numerous addresses." Id.  Then Tyler told his parole officer that he wanted to go to his sister's house on Hasse Street in Detroit.  According to the parole violation report, Tyler "never went to that residence and sent writer a text on 11/23/16 stating that he was having issues but could go to his cousin's house at [redacted] Chapel St, Detroit.   He was instructed to stay at that residence until he was to report on 11/29/16.  Subject never went to that residence and his tether battery died on 11/26/16 resulting in subject not being able to be tracked, which is also a felony. Subject failed to report to his scheduled report on 11/29/16 and his whereabouts are currently unknown." Id.  On November 30, 2016, an agent went to the Chapel Street address looking for Tyler, but no one answered the door.

On December 14, 2016, officers went to the Chapel Street address – Defendant Bembery's residence – to execute an arrest warrant for Tyler. Bembery's brother answered the door and allegedly gave the officers permission to enter.[1]  Although Bembery's brother told the officers that he had not seen Tyler in days, the officers found Tyler hiding in a bedroom closet.  The officers also found a "shotgun located in the left bedroom laying against right corner wall in plain

---

[1] The government is not relying upon this alleged consent to justify the search, however.

view." Def.'s Ex. 2 (arrest report). Defendant contends that the shotgun was behind a closet door off its hinges that was leaning against the wall. Officers asked Bembery if he was the homeowner and whether the shotgun was found in his room, and Bembery replied yes to both questions.[2] Bembery was arrested and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## LAW AND ANALYSIS

Bembery seeks to suppress evidence of the shotgun at trial, arguing that the search violated his Fourth Amendment rights. Here, the officers had a warrant for Tyler's arrest, not a search warrant. An "arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). The Sixth Circuit has held that "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish reasonable belief that the subject of the arrest warrant is within the residence at that time." United States v. Pruitt, 458 F.3d 477, 483 (6th Cir. 2006).

---

[2] Although Defendant seeks suppression of his statement, the government has represented that it does not intend to use the statement at trial.

Under this precedent, officers had limited authority to enter the Chapel Street house to arrest Tyler if they had reason to believe Tyler was there. Cases such as Payton and Pruitt, however, address the Fourth Amendment rights of the person named in the arrest warrant. They do not address the rights of a third party, like Bembery, who was not named in the arrest warrant. See, e.g., United States v. Hardin, 539 F.3d 404, 411, 428-29 (6th Cir. 2008). In Steagald v. United States, 451 U.S. 204, 205-206 (1981), the Supreme Court held that "a search warrant must be obtained absent exigent circumstances or consent" for evidence to be admissible against the person not named in the arrest warrant.

The government does not address Steagald. Rather, it contends that (1) officers reasonably believed Tyler was at the Chapel Street address, allowing them to enter the house based upon the arrest warrant; (2) Tyler's status as a parolee allowed officers to conduct a warrantless search of the house; and (3) the shotgun was properly seized because it was in plain view.

These arguments might carry the day against Tyler, but not against Bembery. Assuming the officers reasonably believed Tyler was at the Chapel Street address, they had the authority to enter the house to arrest Tyler. See Pruitt, 458 F.3d at 483. However, "rights such as those conferred by the Fourth Amendment are personal in nature." Steagald, 451 U.S. at 219. See also Katz v.

United States, 389 U.S. 347, 349 (1967) ("[T]he Fourth Amendment protects people, not places."). The Supreme Court has held that an arrest warrant – as opposed to a search warrant – is not "adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances." Steagald, 451 U.S. at 212, 216. The government has provided no authority for the proposition that the arrest warrant for Tyler, Tyler's status as a parolee, or the "plain view" doctrine serves to justify a search of Bembery's residence for evidence to be used against Bembery.

The government has suggested that there is a factual dispute regarding whether agents had a reasonable belief that the parolee was at Mr. Bembery's residence. Given the above authority, however, this alleged factual dispute is not material. Assuming the officers were justified in entering Bembery's residence to arrest Tyler, they were not justified in searching for evidence to be used against Bembery, even evidence in "plain view." Steagald, 451 U.S. at 216 (search of third-party's home pursuant to arrest warrant "no more reasonable from petitioner's perspective than it would have been if conducted in the absence of any warrant"). As the court in Steagald noted, the "issue here . . . is not whether the subject of an arrest warrant can object to the absence of a search warrant when he

-5-

is apprehended in another person's home, but rather whether residents of that home can complain of the search." Id. at 219. See also Pruitt, 458 F.3d at 487-88 ("Were the police to attempt to use any evidence discovered in the home against the homeowner, after entering the home without a search warrant to arrest a guest, the homeowner may have, under appropriate circumstances, a legitimate Fourth Amendment suppression argument.") (Clay, J., concurring).

Here, it is undisputed that the officers did not have a search warrant, consent, or exigent circumstances justifying their search of Bembery's home. Accordingly, the court finds the search to be in violation of Bembery's Fourth Amendment rights.

**ORDER**

IT IS HEREBY ORDERED that Defendant's motion to suppress is GRANTED.

s/John Corbett O'Meara<br>United States District Judge

Date: September 26, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 26, 2017, using the ECF system.

s/William Barkholz<br>Case Manager